UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN MICHAEL DELONG, a single man,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PORT ORCHARD, a municipal corporation, MINH TRUONG and JANE DOE TRUONG, husband and wife, TREY HOLDEN and JANE DOE HOLDEN, husband and wife, and JOHN DOE POLICE OFFICER OF THE CITY OF PORT ORCHARD, the identity of whom is presently unknown to plaintiff,<br><br>Defendants. | Case No.  C06-5115 RJB<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER AUTHORIZING DISCOVERY ON ISSUE OF QUALIFIED IMMUNITY** |

This matter comes before the Court on Defendants' Motion for Summary Judgment.  Dkt. 17.  The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

**PROCEDURAL AND FACTUAL HISTORY**

This dispute arises out of the incidents leading up to and immediately following the arrest of Plaintiff John Michael Delong.  Mr. Delong alleges that his constitutional rights under the Fourth Amendment were violated by the defendant officers due to unlawful search and seizure.  Mr. Hansen has brought this action in federal court pursuant to 42 U.S.C. § 1983.

On May 10, 2005, officers Trey Holden and Minh Truong from the City of Port Orchard Police Department were summoned to investigate a hit-and-run incident.  Dkt. 1 at 4.  The incident

ORDER
Page - 1

involved a twelve-year-old boy who was hit by a minivan in a Port Orchard neighborhood while riding his bike. *Id.* at 3. Upon arrival, Officer Holden saw that the victim had a piece of flesh missing from the left side of his jaw exposing the bone, his left pant leg was torn, he had scrapes on his knee and left elbow, and he had a deep scratch across his abdomen. Dkt. 17 at 2. Medical aid was given to the victim. *Id.*

The officers were told by the boy and his friend, who was present when the incident occurred, that the minivan was red or maroon and had a bug guard that was broken during the collision. *Id.* The driver was described as being around forty-five years old, kind of husky with dark brown hair, facial hair, a red checkered shirt and dark pants. *Id.* The victim had seen the van in the neighborhood many times. *Id.* The officers were told that the suspect had gotten out of the van, then returned to the van and drove away in a hurry. *Id.*

Officer Holden began his investigation by working his way down the street and talking to neighbors. *Id.* One man who lived in the neighborhood indicated that he knew who the suspect was based on the description of the vehicle and the driver, and told Officer Holden that the suspect lived on a nearby street and had a Blazer for sale in his front yard. Officer Holden the proceeded to the suspect's house, which he located based on the description of the Blazer in the front yard, and knocked on the door. *Id.* A women answered and confirmed that the owner of the Blazer lived in another house behind her. *Id.* at 3. When asked if the owner of the Blazer drove another car, she replied that he drove a red Dodge minivan. *Id.*

Officer Holden then checked the license plate on the Blazer and found that it was registered to John M. Delong (the plaintiff), that his middle name was Michael, that he was fifty-three years old, and that he had a suspended driver's license with an interlock requirement. *Id.* Officer Holden was unable to contact Mr. Delong during the remainder of his shift. *Id.* At the end of his shift, Officer Holden advised Officer Truong of his investigation and belief that there was probable cause to arrest Mr. Delong for hit and run with injury, and to impound his van as evidence. *Id.*

At 11:15 PM the police department learned that Mr. Delong had returned to his residence. Officer Truong and Sgt. McCarthy went to Mr. Delong's residence. *Id.* The parties disagree about what happened next that evening. According to Plaintiff's Complaint, the two officers approached

ORDER
Page - 2

1    Mr. Delong's residence without a warrant and shined a flashlight on him through his bedroom window
2    as he was undressing. Dkt. 1 at 4. The window is located near the front door of Mr. Delong's
3    residence, and the shade covering the window was almost entirely pulled down. *Id.* Officer Truong
4    has to kneel down or bend over to view Mr. Delong through the window. *Id.* Officer Truong ordered
5    Mr. Delong out of the house, where–once outside–they began questioning him about his whereabouts
6    earlier in the day and his maroon minivan parked in his driveway. *Id.* They asked him if he had
7    removed a bug guard from his minivan, which he denied doing. *Id.* Mr. Delong was then arrested on
8    the charge of Felony Hit and Run, and was transported to the Kitsap County Jail. *Id.*

9    According to Defendants' Motion for Summary Judgment, the officers used flashlights that
10   evening because the was completely dark. Dkt. 17 at 3. The officers walked directly to Mr. Delong's
11   front door, which had a window next to it. *Id.* When a light turned on in the room, the officers could
12   plainly see Mr. Delong inside and asked him to come out. *Id.* The officers then advised Mr. Delong
13   of his miranda rights (plaintiff does not contest this issue). *Id.* at 4. In speaking to Mr. Delong, the
14   officers gained additional evidence causing them to suspect him, including (1) it appeared that Mr.
15   Delong was not surprised that the officers were there, (2) it appeared that Mr. Delong was being coy
16   in denying involvement in the incident, and (3) Mr. Delong was unable to recall at first where he had
17   been at the time of the incident. *Id.*

18   After the arrest, Officer Truong completed a certificate of probable cause which included the
19   fact that Mr. Delong's van did not have a bug guard when the officers located it, and his denial of
20   involvement in the incident. *Id.* The probable cause statement was reviewed by Superior Court Judge
21   Jay B. Roof, who determined that there was probable cause and set a $10,000 bond requirement for
22   Mr. Delong's release. *Id.*

23   On the following day, Joan Davis contacted Officer Holden and told him that she had
24   information regarding the hit and run incident. Dkt. 1 at 5. Ms. Davis told Officer Holden that she
25   had come upon the scene just after the incident, spoke with the driver, suggested he call 911, and saw
26   him get back into the minivan and drive away. Dkt. 17 at 5-6. Ms. Davis provided Officer Holden
27   with the van's license plate number. *Id.* Officer Holden noticed that the license number she gave him
28   was not similar to Mr. Delong's license plate number, and then discovered that it was registered to a

Plymouth Voyager minivan registered to George and Patricia Krueger at an address in Portland, Oregon. *Id.* at 6. Officer Holden then found a listing for a George Krueger who resided one street away from the location of the incident. *Id.* In light of this new evidence, Officer Holden immediately went to a detective and then paged the on-duty prosecutor. *Id.* After discussing the possibility of releasing Mr. Delong, Officer Holden went to the jail where he was advised that Mr. Delong had already been arraigned with a bond posted against him, and that a judge would have to authorize his release. *Id.* Unable to secure his release at that time of night, Officer Holden spoke to Mr. Delong at the jail and told him he had discovered new information. *Id.* Officer Holden also said that he would request that the charges be dropped, and that he would ask the prosecutor to recommend his release even though the investigation had uncovered evidence that Mr. Delong had been breaking the law by driving on a suspended license without an interlock and without insurance. *Id.* at 7. Mr. Delong was released from jail the following day after the prosecutor obtained a court order authorizing his release. *Id.*

On March 2, 2006, Mr. Delong filed an action in federal court alleging violation of his Fourth Amendment rights to remain free from unreasonable searches and seizures. Dkt. 1 at 5-6. In his Complaint, Mr. Delong also alleges negligent hiring and supervision, unlawful imprisonment, and negligent and/or intentional infliction of emotional distress. *Id.* at 7-9. On July 13, 2006, Defendants filed a Motion for Summary Judgment, contending that Mr. Delong's rights were not violated because probable cause existed for his arrest, and because shining a flashlight through Mr. Delong's window does not constitute an illegal search. Dkt. 17. Defendants also contend that because probable cause existed for Mr. Delong's arrest, his claims for unlawful imprisonment and negligent and/or intentional infliction of emotional distress are barred as a matter of law. *Id.* at 15-20. Defendants further contend that if Mr. Delong's rights were violated, qualified immunity protects the officers because under the circumstances a reasonable officer would not have known that he or she was violating Mr. Delong's rights. *Id.* at 21.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**QUALIFIED IMMUNITY STANDARD**

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Defendants in a section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without

regard to the knowledge or subjective intent of the particular officer. *Id.* at 819. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). "Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force." *Brosseau*, 543 U.S. at 194 (quoting *Saucier*, 533 U.S. at 206). Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier*, 533 U.S. at 201. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau*, 543 U.S. at 199 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier*, 533 U.S. at 201.

Plaintiff bears the burden of showing that the right in question was clearly established at the time of the incident. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Moreover, the right must be clearly established in the context of the circumstances faced by the officers. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1988). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 503 U.S. at 202. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The contours of the right in question must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right. *Saucier*, 503 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

## DISCUSSION

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1991), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). The first element, acting under the color of state law, is clearly present in this case because the law enforcement officers were acting in their official capacity when they made the arrest. Therefore, the primary issue before the Court is whether Plaintiff's constitutional rights were violated on the night in question.

### A.   QUALIFIED IMMUNITY AND "UNLAWFUL SEIZURE"

Defendants have filed a motion for summary judgment, requesting that the Court dismiss Plaintiff's claims as a matter of law, and/or dismiss Plaintiff's claims as barred under the doctrine of qualified immunity. Discovery has not been completed, and Plaintiff has requested that discovery be permitted prior to the Court's decision on these issues.

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the United States Supreme Court was faced with the question of whether discovery should be allowed prior to deciding qualified immunity issues on summary judgment. The Supreme Court set forth the applicable standards as follows:

> One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government. For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation. Thus, on remand, it should first be determined whether the actions the [plaintiffs] allege [defendant] to have taken are actions that a reasonable officer could have believed lawful. If they are, then [defendant] is entitled to dismissal prior to discovery. If they are not, and if the actions [defendant] claims he took are different from those the [plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [defendant's] motion for summary judgment on qualified immunity

> grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of [defendant's] qualified immunity.

*Id.* at 646 n.6.

In the instant case, Plaintiff contends that the officers did not have near enough information to determine that probable cause existed to arrest him for felony hit and run. Plaintiff contends that the officers relied on the testimony of several people listed in the police reports for making their decision to arrest him, and that he should be able to interview these people before responding to the qualified immunity argument. Moreover, Plaintiff contends that he volunteered to show his van to the officers and provide the names of relatives who could verify that the van had never had a bug guard, which–had the officers investigated the matter–would have cleared him from suspicion. Defendants contend that they did have probable cause to arrest Plaintiff, and provide police reports and a version of the facts that differs from Plaintiff's version.

Because the officers' account of their actions and the surrounding facts are different from Mr. Delong's account, limited discovery on the question of qualified immunity with regard to Plaintiff's unlawful seizure claim is appropriate in this case. Once discovery on this issue has been completed, the Court will determine whether qualified immunity applies, and whether Defendant's motion for summary judgment should be granted on that ground.

**B.     QUALIFIED IMMUNITY AND "UNLAWFUL SEARCH"**

Plaintiff also alleges that his Fourth Amendment rights were violated when the officers conducted an unlawful search by shining a flashlight through his window into his bedroom. Unlike his claim of unlawful arrest, the facts surrounding Plaintiff's claim of unlawful search are fairly straightforward and not in dispute. In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier*, 533 U.S. at 201.

**I.  Constitutional Right Allegedly Violated**

The first inquiry under *Saucier v. Katz* is whether the facts as alleged constitute a civil rights violation. Plaintiff alleges that the officers unlawfully searched his residence when they walked up to his front door, and bent over and peered through a portion of his window next to the front door with

the help of a flashlight. In deciding whether an unconstitutional search has occurred, the court considers whether the defendant had a legitimate expectation of privacy and whether that expectation is one that society is willing to recognize as reasonable. *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *State v. Young,* 123 Wn.2d 173, 189 (1994). A legitimate expectation of privacy is one which includes an actual and subjective expectation of privacy. *Katz,* 389 U.S. at 361. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *United States v. Santana*, 427 U.S. 38, 42 (1976); s*ee also State v. Seagull*, 95 Wn.2d 898, 901 (1981) ("As a general proposition, it is fair to say that when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, that detection does not constitute a 'search'. . . .")

As the plaintiff's driveway and path to his front door were open to the public as the means of public approach to the residence, there was no expectation of privacy in areas which could be viewed from this area. Officer Truong did not violate any right of the plaintiff by walking up the same path that other members of the public could use to approach the residence. *See United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975); *Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir. 1968). There is no reasonable expectation of privacy in areas impliedly open to the public. *State v. Hornback*, 73 Wash. App. 738, 743 (1994). Such areas considered "impliedly open to the public" include driveways, walkways, and access routes leading to a residence, and entry onto those areas by law enforcement does not implicate any constitutional protections. *Id.*, citing *State v. Hoke*, 72 Wash. App. 869 (1994) ("Police with legitimate business may enter areas of the curtilage that are impliedly open, such as access routes to a house."); *State v. Rose*, 128 Wn.2d 388, 393 n.2 (1996) (In responding to report of possible marijuana grow operation, officer "was entitled to approach the front of the mobile home, access the residence by the impliedly open way between the parking area and the mobile home, and step up onto the front porch to conduct his investigation."); *State v. Seagull*, 95 Wn.2d at 902.

Moreover, the use of a flashlight to illuminate a darkened area does not constitute a search and does not trigger Fourth Amendment protection when the officer is located in a place in which he has a

right to be. *United States v. Dunn*, 480 U.S. 294, 305 (1987) (holding that the officer's use of a flashlight into the defendant's barn did not constitute an unreasonable search within the meaning of the Fourth Amendment). In *United States v. Barajas-Avalos*, 377 F.3d 1040 (9th Cir. 2004), the Ninth Circuit held that the observation of the interior of a travel trailer through a window, even when enhanced by a flashlight, does not constitute a search when the observation is made from an open field or public place. 377 F.3d at 1056 (citing *Dunn,* 480 U.S. at 298). In *United States v. McIver*, 186 F.3d 1119, 1125 (9th Cir. 1999), the Ninth Circuit approved the use of techniques of surveillance that included more than "the five senses of the officers and their unaided physical abilities. Binoculars, dogs that track and sniff out contraband, searchlights, fluorescent powders, automobiles and airplanes, burglar alarms, radar devices, and bait money contribute to surveillance without violation of the Fourth Amendment in the usual case." (citing *United States v. Dubrofsky,* 581 F.2d 208, 211 (9th Cir. 1978)). In sum, "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them. . . . We have never equated police efficiency with unconstitutionality, and we decline to do so now." *United States v. Knotts,* 460 U.S. 276, 282, 284 (1983).

In *State v. Rose*, 128 Wn.2d 388 (1996), relying on the federal and other state authorities cited above, the Washington Supreme Court found no constitutional violation where the police shined a flashlight through the window of the defendant's mobile home while standing on the front porch. *See Rose*, 128 Wn.2d at 399 ("Nor is the mere use of a flashlight an intrusive method of viewing. A flashlight is an exceedingly common device; few homes or boats are without one. It is not a unique, invasive device used by police officers to invade the privacy of citizens . . ."); *see also State v. Bobic*, 140 Wn.2d 250 (2000) (holding that use of a flashlight from adjoining storage unit into defendant's unit was not illegal search).

In sum, Officer Truong's use of a flashlight to look inside the window near the front door from a place accessible by the public was within the plain view doctrine and did not infringe upon any expectation of privacy. The flashlight did not enable Officer Truong to see through closed blinds or to see anything that was not in plain view. Its use did not violate Plaintiff's constitutional right to be free from unlawful searches. Therefore, because there was no violation of Plaintiff's Fourth Amendment

right, Defendants are entitled to qualified immunity as to this claim under the first *Saucier* step and the Court is not required to proceed to the second *Saucier* step. Plaintiff's claim of unlawful search is barred under the doctrine of qualified immunity and should be dismissed with prejudice. Moreover, Plaintiff's claim of unlawful search could not survive summary judgment under the standards set forth in Fed. R. Civ. P. 56(c) and should be dismissed for this reason as well.

**C.    SUMMARY JUDGMENT ON REMAINING CLAIMS**

Plaintiff has alleged state law claims of false imprisonment and negligent and/or intentional infliction of emotional distress. Moreover, Plaintiff has requested discovery in order to respond to Defendants' Motion for Summary Judgment on these issues. Because each of these state law claims will depend, in part, on whether the Court finds that qualified immunity applies to Plaintiff's Fourth Amendment claim of unlawful seizure, the Court will determine Plaintiff's state law claims after determining the issues of qualified immunity.

**ORDER**

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 17) is **GRANTED** in part and **DENIED** in part as follows:

(1) Plaintiff's claim of unlawful search is **DISMISSED** with prejudice.

(2) Plaintiff is entitled to limited discovery on the question of Defendants' qualified immunity with regard to Plaintiff's claim of unlawful arrest. The parties should meet and confer, adopt a limited discovery plan, and complete limited discovery by October 9, 2006.

(3) Upon completion of discovery, both parties may supplement their pleadings on the qualified immunity issue, and Defendants should renote their Motion for Summary Judgment (Dkt. 17) for the Court's consideration. If qualified immunity is denied at that time, discovery with regard to all remaining issues will commence, and Defendants may renote their Motion for Summary Judgment (for determination on the merits) once discovery is complete.

1    The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of
2 record and to any party appearing *pro se* at said party's last known address.
3    DATED this 9th day of August, 2006.

>                              Robert J. Bryan
>                              United States District Judge